UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BADGER DAYLIGHTING CORP., | Case No.   2:24-cv-1678-JDP |
| Plaintiff, | |
| v. | ORDER |
| DIG ALERT DONE RIGHT, LLC, | |
| Defendant. | |

Plaintiff and counter-defendant Badger Daylighting Corp. ("plaintiff") brings this action against defendant and counter-claimant Dig Alert Done Right, LLC ("defendant"), alleging that defendant breached the franchise agreement between the parties in which plaintiff was the franchisor and defendant the franchisee (hereinafter, "the Agreement"). ECF No. 1. Defendant filed an answer and counterclaim, alleging that plaintiff breached the Agreement in the first instance. ECF No. 6. Defendant now moves to amend its answer to add seven additional affirmative defenses, and because such request comes more than a year after the deadline to amend set by the scheduling order, defendant necessarily seeks to modify the scheduling order as well. ECF No. 36. Defendant also moves for summary judgment on plaintiff's breach-of-contract claim. ECF No. 37. For the following reasons, defendant's motions are denied.

1

I.    **Motion to Amend**

A.    **Legal Standards**

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." *See* Fed. R. Civ. P. 15(a)(2); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016). "This policy is to be applied with extreme liberality." *C.F. v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). However, where, as here, a request to amend comes after the deadline set by the scheduling order, it is Rule 16 of the Federal Rules of Civil Procedure, not the more permissive Rule 15, that controls, because the party seeking amendment is necessarily moving to modify the scheduling order. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15."). Under Rule 16, a party must show good cause for not moving to amend within the deadline. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Mammoth Recreations*, 975 F.2d at 609. To establish good cause, that party must generally show that even with the exercise of due diligence, they could not comply with the scheduling order. *Id.* Prejudice to other parties, if any, may be considered, but the focus is on the moving party's reason for seeking the modification. *Id.* If the party seeking to modify the scheduling order fails to show due diligence, the inquiry should end, and the court should not grant the motion to modify. *Zivkovic v. Southern California Edison, Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citing *Mammoth Recreations*, 975 F.2d at 609). "Relevant inquiries [into diligence] include: whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." *United States ex rel. Terry v.*

*Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 404 (E.D. Cal. 2018) (internal quotation marks and citation omitted; alteration in original).

### B.   Analysis

The initial pretrial scheduling order was filed on October 31, 2024, and stated, "No further . . . amendments to pleadings will be permitted except with leave of court, which will be granted only upon a finding of good cause." ECF No. 22.  Defendant argues that the motion to amend is governed by Rule 15 because the scheduling order did not specify an exact date as the deadline (i.e., state the parties had until a certain date to file amended pleadings).  ECF No. 44 at 6.  To support its position, defendant relies on *Dhillon v. Princess Cruise Lines, Ltd.*, No. 22-55215, 2023 WL 5696529, at *2 (9th Cir. Sept. 5, 2023), where the Court of Appeals held that the district court erred by applying Rule 16 where the scheduling order "did not contain a deadline for amending the pleadings." *Id.*

The district court's scheduling order in that action, however, was silent as to the amendment of pleadings.  *Dhillon v. Princess Cruise Lines, Ltd.*, No. 2:20-cv-11661-DDP-GJS (C.D. Cal.), ECF No. 45.  Here, in contrast, the scheduling order addressed the amendment of pleadings—stating that there would be no further amendments unless a party showed "good cause" to amend.[1]  ECF No. 22.  While defendant is correct that the scheduling order did not include a then-future date by which amended pleadings had to be submitted, it enacted a deadline of the day on which it was filed and thereby established a "timetable for amending the pleadings." *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) ("[T]he district court correctly found that it should address the issue under Federal Rule of Civil Procedure 16 because

---

[1] Defendant also cites an order from this district where the court held that a motion to amend was governed by Rule 15.  ECF No. 44 at 7 (citing *Guardian All. Techs., Inc. v. Miller Mendel, Inc.*, No. 2:22-cv-01390-WBS-AC, 2025 WL 3281246, at *1 (E.D. Cal. Nov. 25, 2025)).  There, the court relied on other decisions from within this circuit to support its holding.  Those decisions, however, are inapposite, since those cases involved scheduling orders that were silent as to the amendment of pleadings. *See VIA Techs., Inc. v. ASUS Computer Int'l*, No. 14-cv-03586-BLF, 2017 WL 491172, at * 1 (N.D. Cal. Feb. 7, 2017); *Knudsen v. City & Cnty. of San Francisco*, No. 12-cv-01944-JST, 2013 WL 6235507, at *1 n.1 (N.D. Cal. Dec. 2, 2013).

it had filed a pretrial scheduling order that established a timetable for amending the pleadings."). Accordingly, Rule 16 governs.

The scheduling order was filed on October 31, 2024, and provided a discovery cut-off date of September 26, 2025. ECF No. 22. The discovery deadline was later extended to October 31, 2025.[2] ECF No. 29. As such, by bringing its motion to amend on November 17, 2025, defendant waited until after the close of discovery to seek amendment. Defendant's only explanation for such delay is that, on May 5, 2025, it received through discovery plaintiff's "Franchise Disclosure Document ('FDD') that preceded the Franchise Agreement." ECF No. 36-2 ¶ 10. Defendant asserts it "did not have [the FDD] when it filed its original Answer and Counter-Complaint" and that the FDD "reveal[ed] potential additional legal defenses to [plaintiff's] breach of contract claim." *Id.*

Defendant's proffered explanation, however, is belied by the record, since Everett Jackson, defendant's president of operations, confirmed receipt of the FDD on February 7, 2022—before the parties even executed the Agreement. ECF No. 38-8 at 75. Consequently, defendant had knowledge of the FDD when it filed its original answer and counter-complaint, and it therefore fails to show that it acted with diligence.[3] Accordingly, defendant's motion to amend is denied.

## II.     Motion for Summary Judgment

### A.     Legal Standards

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."

_____

[2] Subsequently, a limited extension was granted for the completion of depositions already noticed. ECF No. 33.

[3] Even if defendant had established that it did not have a copy of the FDD until May 5, 2025, it still falls short of showing that it acted with diligence. Defendant waited until November 17, 2025, to file its motion to amend, and it does not adequately explain why it waited more than six months from the date it purportedly received the FDD to do so.

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by: (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position.  *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider other materials in the record not cited by the parties, but it is not required to do so.  *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323).  The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson*, 477 U.S. at 252).  However, the non-moving party is not required to establish a

material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.      Background**

Plaintiff is the "provider of non-destructive excavating and related services throughout the country." ECF No. 38-5 ¶ 3. Everett Jackson, defendant's sole managing member, worked for plaintiff from 2016 to 2020. *Id.* ¶¶ 2-3. After concluding his employment with plaintiff, Mr. Jackson formed defendant "to pursue opportunities in the underground service alert industry," since he had "previously managed underground services alert tickets" while employed by plaintiff. *Id.* ¶ 4. In 2021, plaintiff contacted defendant to inquire about a franchise agreement whereby defendant would become "a franchisee in California." *Id.* ¶ 5. After various communications, some of which are described below, the parties executed the Agreement in May 2022. *Id.* ¶ 20.

On November 22, 2023, plaintiff provided defendant with a notice of default, alleging that defendant had failed to abide by the terms of the Agreement. ECF No. 1 ¶ 26. On December 28, 2023, plaintiff terminated the Agreement and asked that defendant make all outstanding payments within five days. *Id.* ¶ 29. On June 12, 2024, plaintiff brought the instant action for breach of the Agreement and estimated "that the total amount owed to it by [defendant] is in excess of $1,032,188." *Id.* ¶ 32.

**C.      Analysis**

Defendant's motion relies on affirmative defenses that are not in the answer but rather in its proposed amended answer, which is attached to its motion to amend.  ECF No. 37-1 at 11.  Specifically, defendant moves for summary adjudication on three proposed affirmative defenses to plaintiff's breach-of-contract claim: "Willful Violation of California Corporations Code § 31110 (Seventh Affirmative Defense), Willful Violation of California Corporations Code § 31201 (Eighth Affirmative Defense), and Illegality of Contract (Ninth Affirmative Defense)."  ECF No. 37 at 2.  As plaintiff points out, defendant cannot seek summary judgment on the basis of defenses it has not raised.  *See Heathman v. Portfolio Recovery Assocs., LLC*, No. 12-cv-201-IEG RBB, 2013 WL 755674, at *6 (S.D. Cal. Feb. 27, 2013) ("Summary judgment is only available on claims or defenses (or parts thereof) actually alleged.").

Defendant may, however, raise those affirmative defenses at the summary judgment stage, unless plaintiff shows it is prejudiced.  *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) ("In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment.").  Defendant relies on *Camarillo* in its moving paper, *see* ECF No. 37-1 at 11 n.1; plaintiff does not address this issue, much less explain why it is prejudiced by defendant raising new affirmative defenses in its motion for summary judgment.  Because plaintiff "points to no tangible way in which it was prejudiced by the delay," defendant may raise those affirmative defenses, which are analyzed below.  *See Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997).[4]

Defendant argues that the Agreement is invalid because plaintiff allegedly violated three provisions of California Corporations Code: Sections 31101, 31125, and 31201.  First, defendant argues that plaintiff did not supply a copy of financial statements or an unconditional guaranty, as was mandated under Section 31101.  ECF No. 37-1 at 14.  While a franchisor ordinarily registers

---

[4] The parties also submit objections to four declarations.  ECF Nos. 42-5, 45-2, 45-3, and 45-4.  Those objections are not addressed herein because they are immaterial, since none of the challenged declarations are considered in reaching the rulings below.  *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) ("Before ordering summary judgment in a case, a district court must . . . rule on evidentiary objections that are material to its ruling.").

7

with the state before establishing a franchise, Section 31101 exempts a franchisor from the registration requirement if it satisfies, *inter alia*, net worth and disclosure requirements. Cal. Corp. Code § 31101. The net worth requirement is satisfied where the franchisor has a net worth of more than $1,000,000, the parent has a net worth of more than $5,000,000, and "the parent absolutely and unconditionally guarantees to assume the duties and obligations of the franchisor under the franchise agreement should the franchisor become unable to perform its duties and obligations." *Id.* The disclosure requirement is satisfied where the franchisor discloses certain information to a potential franchisee, including a copy of financial statements demonstrating fulfillment of the net worth requirement and a copy of the unconditional guaranty. *Id.*

Here, defendant argues that plaintiff did not provide a copy of financial statements or the unconditional guaranty. ECF No. 37-1 at 14. There is, however, a genuine dispute as to whether plaintiff supplied defendant with these documents, since Mr. Jackson confirmed receipt of both the financial statements and the guaranty on February 7, 2022—before the parties executed the Agreement. ECF No. 38-8 at 75. While Mr. Jackson now states that he never received the financial statements or the guaranty, *see* ECF No. 38-5 ¶ 20, his prior confirmation of receipt creates a genuine dispute of material fact, and therefore summary adjudication is inappropriate on this basis.

Second, defendant argues that plaintiff violated Section 31125 by making material modifications to the proposed franchise agreement before it was executed. ECF No. 37-1 at 15. Section 31125, however, only applies to "a material modification of an *existing* franchise." Cal. Corp. Code § 31125 (emphasis added). At the time defendant proposed modifications, there was no "existing franchise" because the parties had not yet executed the Agreement. Accordingly, defendant does not show that plaintiff violated Section 31125.

Finally, defendant argues that plaintiff violated Section 31201 by making misleading statements or omitting material facts in the FDD—the document, as noted, that plaintiff provided defendant before executing the Agreement. Section 31201 covers written or oral communications other than those covered in Section 31200. Cal. Corp. Code § 31201. Section 31200, in turn, prohibits the willful inclusion of "any untrue statement of a material fact in any application,

notice or report filed with the commissioner [of corporations] under this law" or the willful omission of "any material fact which is required to be stated therein." *Id.* § 31200. "Franchise disclosure documents . . . must be filed with [the] Commissioner and thus cannot give rise to a claim under Section 31201." *Quick Dispense, Inc. v. Vitality Foodservice, Inc.*, No. 8:23-CV-02322-FWS-ADS, 2024 WL 2925589, at *6 (C.D. Cal. June 4, 2024) (citing Cal. Corp. Code § 31114). Consequently, though defendant invokes Section 31201, its argument is more properly considered under Section 31200.

Defendant argues that defendant made three misrepresentations. First, defendant argues that plaintiff made a misrepresentation regarding restrictions on customers. ECF No. 37-1 at 14. The FDD stated, "There are no limitations on customers to whom you may sell." ECF No. 38-8 at 24. Defendant argues that that statement was a misrepresentation because the Agreement defined defendant's "Territory" as "IBEW [International Brotherhood of Electrical Workers] Diversity Minority Veteran Work Requirements" within specified counties in California. ECF No. 37-1 at 14 (citing ECF No. 38-12 at 33). Defendant argues that these provisions conflict, and, while such conflict is not immediately apparent, plaintiff does not contest this argument. To the extent that the FDD and the Agreement conflicted, however, Defendant knew about any potential restriction on its customers before signing the Agreement. As Mr. Jackson explained, plaintiff told him it wanted to utilize his "minority-veteran-diverse background" and "become a signatory" to the IBEW. ECF No. 38-5 ¶ 5. After defendant provided the FDD, the parties determined the "Territory," including a hand-marked map of California on which the parties identified the counties where defendant would pursue "IBEW Diversity Minority Veteran Work." ECF No. 38-12 at 42. Accordingly, defendant knew about any potential restrictions on its customers, and thus the representation made in the FDD is not a basis for invalidating the Agreement.

Second, defendant argues that plaintiff misrepresented that it had experience "in conducting IBEW work or minority-diversity-veteran-set-aside work." ECF No. 37-1 at 15. The FDD stated that plaintiff had been selling franchises in the United States since 2000 and that its Corporate Operations division provides services at 132 locations nationwide. ECF No. 38-8 at 8.

9

Defendant does not dispute that plaintiff had such experience. Rather, defendant argues that plaintiff made a material omission by not stating in the FDD that it did not have "prior business experience in conducting IBEW work or minority-diversity-veteran-set-aside work." ECF No. 37-1 at 15. Defendant, however, fails to explain why plaintiff was "required" to include that information and fails to show plaintiff's omission was willful. *See* Cal. Corp. Code § 31200 ("It is unlawful for any person . . . willfully to omit to state in any such application, notice, or report any material fact which is required to be stated therein."). Moreover, Mr. Jackson states that plaintiff told him before the FDD was provided that it "had never sold a franchise system where the franchisee was limited to customers that [satisfied] IBEW and diversity minority veteran work requirements" and that it "was losing out on business opportunities because it did not qualify as a minority-diverse-veteran-owned company and was not an IBEW signatory." ECF No. 38-5 ¶ 5. Accordingly, defendant knew before entering the Agreement about plaintiff's lack of "prior business experience in conducting IBEW work or minority-diversity-veteran-set-aside work," *see* ECF No. 37-1 at 15, and thus plaintiff did not misrepresent its experience.

Lastly, defendant argues that plaintiff misrepresented that it "would provide robust pre-opening and post-opening assistance to [defendant]" and that it would allow defendant to use its trademarks and logos. *Id*. In the FDD, plaintiff stated that it would provide pre-opening assistance, such as conducting a training program, and post-opening assistance, such as written materials, and that it would allow defendant to use its trademarks, such as names and logos, in operating the franchise. ECF No. 38-8 at 21-23. Defendant does not, however, present any evidence to show that plaintiff, at the time it sent the FDD to defendant, had no intention of providing such assistance and use of trademarks. Instead, defendant relies on plaintiff's alleged non-performance to show that plaintiff misrepresented its intentions. Such reliance is fatal to defendant's argument because, under California law, a contractual promise is a misrepresentation only if a party has no intention of performing. *See Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."). As such, defendant cannot establish that plaintiff violated Section 31200 only

by alleging that plaintiff did not actually perform a contractual obligation.

Consequently, defendant has not shown that plaintiff violated the above-named sections of the Corporations Code, and it therefore is not entitled to summary judgment on plaintiff's breach-of-contract claim.

Accordingly, it is hereby ORDERED that:

1. Defendant's motion to amend its answer and counterclaim, ECF No. 36, is DENIED.

2. Defendant's motion for summary judgment, ECF No. 37, is DENIED.

IT IS SO ORDERED.

Dated:    February 18, 2026    _____
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

11